IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIAM ROBERT KENNEDY,

                Plaintiff,

      v.

WORLD SAVINGS BANK, FSB, et al.

            Defendant(s).

Case No.: 14-cv-05516-JSC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 7

Plaintiff William R. Kennedy ("Plaintiff"), proceeding pro se, brings this action to prevent foreclosure of his home.  He sues Defendants World Savings Bank, FSB ("World Savings Bank"), the originator of the loan; the Bank of New York as Trustee for Securitized Trust World Savings Bank Mortgage pass-through Certificates REMIC 19 Trust ("REMIC 19 TRUST"); Mortgage Electronic Registration System ("MERS"); Wells Fargo Bank ("Wells Fargo"); and Does 1 through 100 (collectively "Defendants") all of whom were involved the securitization of Plaintiff's mortgage.  Now pending before the Court is Defendant Wells Fargo's Motion to Dismiss.  (Dkt. No. 7.)  After carefully considering the briefing submitted, the Court GRANTS Wells Fargo's motion to dismiss with partial leave to amend.

## BACKGROUND

### A.    Factual Background

      The gravamen of the Complaint is that when Defendants securitized Plaintiff's mortgage note, they lost their interest in the property.  (*See generally* Complaint.)  Wells Fargo appears in this action on its own behalf and as successor of World Savings Bank due to the companies' merger.  (Dkt. No. 7

United States District Court
Northern District of California

at 2.)  A review of the docket indicates that Wells Fargo is the only Defendant that has appeared to date.

1.     *Complaint Allegations and in Judicially Noticeable Documents*

The real property at issue is located at 1619 38th Avenue, San Francisco, CA 94122 ("the Property").  (Complaint ¶ 8.)  In June 2005, Helen K. Yamasaki ("Borrower") obtained a $500,000 mortgage loan—a mortgage promissory note—from World Savings Bank.  (*Id.* ¶ 29; Dkt. No. 8-1 at 14 (Ex. F).)  The Deed of Trust secured the mortgage promissory note ("the Note") naming World Savings Bank as beneficiary.  (Dkt. No. 8-1 at 14 (Ex. F).)  At some point Borrower stopped making payments; in June of 2012 NDex West, LLC ("NDex West") recorded a Notice of Default advising Borrower that if her property was in foreclosure because she was behind in payments, "it may be sold without any court action."  (Dkt. No. 8-1 at 34 (Ex. G).)  The notice stated that the default was in the amount of $47,710.14, and that the amount would "increase until [Borrower's] account [became] current."  (*Id.*)  In September 2012, NDex West recorded a Notice of Trustee's Sale advising her of the following: "You are in default under a deed of trust, dated 06/14/2005.  Unless you take action to protect your property, it may be sold at a public sale."  (*Id.* at 39 (Ex. H).)  The Notice of Trustee's Sale also provided that "[t]he total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $541,491.97."  (*Id.*)

Plaintiff alleges that Defendants "cannot show proper receipt, possession, transfer negotiations, assignment and ownership of Borrower's original Promissory Note and Mortgage/Deed of Trust herein; therefore, none of the Defendants have perfected any claim of title or security interest in the Property."  (Complaint ¶ 26.)  In other words, he insists that none of the Defendants has an interest in the Property and therefore cannot foreclose on it.  Specifically, Plaintiff argues that the note was securitized improperly because it was not first transferred to Bank of New York, acting as trustee for "REMIC 18 TRUST," prior to the securitization.  (*Id.* ¶ 30.)  The Complaint defines securitization as "the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms" for the purpose of providing a monetary supply to lenders and investments to bond holders.  (*Id.* ¶ 17.)  Plaintiff alleges that Defendants sold, transferred, and

2

securitized the note without transferring the note through the proper chain of parties, thereby violating the Pooling Service Agreement ("PSA") that governed the securitization. (*Id.* ¶¶ 30-32.) Plaintiff alleges further that when the loan on the Property closed, the original lender signed a PSA that governed the note on his property and set forth a closing date on which the loan had to be sold to the trust, and that Bank of New York improperly transferred the note to the securitization trust prior to that closing date such that any transfer of interest after the closing date is void as a matter of law. (*Id.* ¶¶ 40-41.)

In addition to allegations of improper securitization, Plaintiff also claims that World Savings Bank failed to do its proper due diligence when underwriting the loan and illegally qualified Borrower for a loan it knew she did not qualify for. (*Id.* ¶¶ 51-52.) In short, Plaintiff alleges that Defendants' fraudulent conduct throughout the loan approval process—*i.e.*, predatory lending—demonstrates their intent to gain possession of the Property all along. (*Id.* ¶ 55.)

2.    *Facts Alleged in Declaration and Opposition*

Plaintiff is not the Borrower named in any of the above transactions, and the Complaint is devoid of facts that explain how he came to own the Property. However, in a declaration and his opposition to Wells Fargo's motion to dismiss, Plaintiff alleges additional facts. Although the Court cannot consider these facts in resolving the instant motion, *see Monzon v. S. Wine & Spirits of Cal.*, 834 F. Supp. 2d 943, 940 (N.D. Cal. 2011) (internal citations omitted), they are nonetheless helpful in understanding Plaintiff's claim and in evaluating whether he should be given leave to amend. In his declaration, Plaintiff represents that he inherited the property through joint tenancy when Borrower passed away. (Dkt. No. 19 at 2.) He adds that he and Borrower were business partners and friends, and that he was her personal conservator at the time of her death. (*Id.*) It is unclear from the Complaint whether he still lives in the Property; however, in the opposition Plaintiff asserts that he "has ownership interest in the property, which can be lost through foreclosure by the lender"— implying that he currently lives in the Property and seeks to prevent foreclosure. (Dkt. No. 17 at 3.)

Plaintiff includes further facts in support of his fraud/predatory lending claims against Defendants: he explains that Borrower was unable to enter into contract decisions at the time she took out the loan because she was under financial conservatorship as of August 11, 2005. (*Id.*) In his

opposition, Plaintiff also adds that World Savings Bank gave Borrower another loan for $480,000 on her rental proper at 226-228 Carl Street.  (*Id.*)  In January 2014 he learned that Borrower had defaulted on the loan for the Carl Street property and because he was unable to pay the mortgage, he "allowed the Carl Street unit to go into foreclosure."  (*Id.*)

In March 2010, Plaintiff borrowed $32,000 to pay Wells Fargo to take the Property (at issue in this case) out of foreclosure.  (*Id.*)  Four years later, in February 2014, Plaintiff hired Certified Forensic Loan Auditors to audit the loan on the Property; that is when he learned of the loan securitization.  (*Id.*)

Finally, in his opposition Plaintiff adds that his robo-signing claim invalidates the assignments rendering the potential foreclosure sale void.  (*Id.* at 5.)

**B.     Procedural Background**

In February 2014, Plaintiff filed a lawsuit in San Francisco Superior Court charging all Defendants with the following ten causes of action: wrongful foreclosure, fraud in the concealment, fraud in the inducement, intentional infliction of emotional distress, slander of title, quiet title, declaratory relief, violation of the Truth in Lending Act ("TILA"), Home Ownership and Equity Protection Act ("HOEPA"), and Real Estate Settlement Procedures Act ("RESPA"), and rescission. (Complaint ¶¶ 56-251.)  Wells Fargo did not appear in the state court action, but in December 2014, it filed a Notice of Removal pursuant to U.S.C. §§ 1441(b), 1331, and 1332, on the basis of federal question jurisdiction and diversity of citizenship, respectively.  (Dkt. No. 1 at 2.)  Plaintiff did not challenge removal.  (Dkt. No. 17.)  Both parties have consented to magistrate judge jurisdiction in this matter.  (Dkt. No. 4; Dkt. No. 24.)  Immediately after removal, Wells Fargo filed a motion to dismiss all of Plaintiff's claims for failure to state a claim.  (Dkt. No. 7 at 2.)

Wells Fargo argues that the Complaint is predicated on a factually and legally inaccurate theory—that improper securitization renders Defendants without authority to foreclose—for two reasons.  (Dkt. No. 21 at 7.)  First, that loan securitization is not a proper basis on which to challenge a non-judicial foreclosure such as this.  (*Id.*)  Second, that its corporate transition from World Savings Bank renders Plaintiff's securitization theory moot: there was no transfer of the Note from one lender to some outside source; rather, World Savings Bank just changed its name and became a division of

United States District Court
Northern District of California

Wells Fargo, so transfer among those entities was proper.  (*Id.* at 7-9.)  Further, Wells Fargo argues that the claims arising from Plaintiff's allegations of predatory lending fail for several additional reasons: because the statute of limitations has run for certain claims, because Plaintiff has failed to allege that he can tender the outstanding debt, and that he has otherwise insufficiently pled the claims. (*Id.* at 6-9.)

The Court set the matter for hearing on March 19, 2015, but Plaintiff failed to appear.  (Dkt. No. 25.)  The Court took the matter under submission without hearing argument.  Although Plaintiff later filed a statement of apology for missing the hearing due to mistake and requesting a new date for a hearing on Wells Fargo's motion to dismiss (Dkt. No. 26), the Court concludes that oral argument is not necessary.  *See* L.R. 7-1(b).

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) contends that the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 554 (internal citations and quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).  "Determining whether a complaint states

a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

Additionally, pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010), the Ninth Circuit held that courts must still liberally construe pro se filings post-*Iqbal*, noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342 (internal citations and quotation marks omitted). Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Generally, when a complaint is dismissed, "leave to amend shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); *see* Fed. R. Civ. P. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### A.     Judicial Notice

As a preliminary matter, the Court must decide what materials it will consider when determining whether the Complaint survives Wells Fargo's motion to dismiss, as both parties have submitted materials outside the pleadings.

When considering a motion to dismiss, a court does not normally look beyond the complaint in order to avoid converting a motion to dismiss into a motion for summary judgment. *See Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). However, a court may take judicial notice of material that is submitted as part of the complaint or is necessarily relied upon by the complaint, as well as matters of public record. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001). Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable

United States District Court
Northern District of California

dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).

Here, Wells Fargo asks the Court to take judicial notice of eight documents (Wells Fargo's Exhibits A-H).[1] Wells Fargo asserts that Exhibits A through E are "true and correct copies reflecting official acts of the executive branch of the United States, pursuant to FRE 201." (Dkt. No. 8 at 2.) In addition, Wells Fargo maintains that Exhibits F through H are true and correct copies of official public records of the Office of the San Francisco County Recorder. (*Id.* at 3.)

Plaintiff opposes Wells Fargo's Request for Judicial Notice, arguing that Defendants have "inappropriately submitted extrinsic evidence for the truth of the matter contained within the documents" and that "although the evidence of a document may be judicially noticeable, the truth of the statements contained in the document and its proper interpretation are not subject to judicial notice." (Dkt. No. 18 at 2.)

Here, several of Plaintiff's claims "necessarily rely" upon information contained in the deed of trust, the notice of default, and the notice of trustee's sale (Wells Fargo's Exhibits F-H,) and the Court may therefore consider these documents on this basis. *See Lee*, 250 F.3d at 688-89. Moreover, all of Wells Fargo's Exhibits are judicially noticeable matters of public record; indeed, courts in this District

---

[1] The documents include: (A) Certificate of Corporate Existence dated April 21, 2006, Office of Thrift Supervision, Department of the Treasury; (B) letter dated November 19, 2007, Office of Thrift Supervision, Department of Treasury; (C) Charter of Wachovia Mortgage, FSB, dated December 31, 2007; (D) Official Certification of the Comptroller of the Currency ("OCC") stating that effective November 1, 2009, Wachovia Mortgage, FSB converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A.; (E) Federal Deposit Insurance Corporation profile and history of World Savings Bank, FSB, dated March 14, 2012; (F) Deed of Trust signed by the borrower dated June 14, 2005, and record in the official records of the Office of the San Francisco County Recorder on June 21, 2005 as Document No. 2005-H975534-00; (G) Notice of Default and Election to Sell Under Deed of Trust dated June 5, 2012 and recorded in the official records of the Office of the San Francisco County Recorder on June 8, 2012 as Document No. 2012-J427836-00; and (H) Notice of Trustee's Sale dated September 3, 2012 and recorded in the official records of the Office of the San Francisco County Recorder on September 10, 2012 as Document No. 2012-J499839-00. (Dkt. No. 8 at 1-2; 8-1 at 1-41 (Ex. A-H).)

regularly take judicial notice of similar documents relating to real property that are publicly recorded in county recorder's offices. *See, e.g.*, *Chaghouri v. Wells Fargo Bank, N.A.*, No. 14-CV-01500-YGR, 2015 WL 65291, at *1 (N.D. Cal. Jan. 5, 2015) (finding Wells Fargo's exhibits enclosing official records or documents reflected official acts of governmental agencies, appropriate for judicial notice); *Mulato v. Wells Fargo Bank, N.A.*, No. 14-CV-00884 NC, 2014 WL 7243096, at *5 (N.D. Cal. Dec. 19, 2014) (taking judicial notice of the same and similar documents); *Fernandez v. Wells Fargo Bank, N.A.*, No. 12–cv–03941 NC, 2012 WL 5350256, at *2 (N.D. Cal. Oct. 29, 2012) (same). Moreover, it is well established that a court may take judicial notice of a document not to credit the truth of the allegations or facts set forth therein, but rather only for the purposes of "noticing the existence" of the documents. *See McMunigal v. Bloch*, No. C 10-02765 SI, 2010 WL 5399219, at *2 (N.D. Cal. Dec. 23, 2010). Accordingly, the Court OVERRULES Plaintiff's objection and GRANTS Wells Fargo's request for judicial notice of the existence of Wells Fargo's Exhibits A through H under Federal Rule of Evidence 201(b).

Notwithstanding his opposition to Wells Fargo's Request for Judicial Notice, and without making such a request himself, Plaintiff also submitted a declaration and 10 documents not included in the Complaint (Plaintiff's Exhibits A-J)[2] in support of his opposition to Wells Fargo's motion to dismiss. (Dkt. No. 19; 19-1—19-10 (Ex. A-J).) In addition, as discussed above, in both his declaration and the opposition itself, Plaintiff alleges additional facts outside the Complaint.

Although Plaintiff has not made a formal request for judicial notice as the rules require, given his pro se status the Court construes his materials as including such request. *See Erickson*, 551 U.S. at 94. Accordingly, the Court takes judicial notice of Plaintiff's exhibits A through D as they are also matters of public record. Importantly, aside from the facts that Plaintiff alleges for the first time in the opposition, which the Court cannot consider, *see Monzon*, 834 F. Supp. 2d at 940, Exhibits A and C are the only public documents that indicate Plaintiff's relationship with Borrower, and therefore that

---

[2] These documents include: (A) Grant Deed; (B) Borrower's California Death Certificate; (C) Borrower's Will; (D) Letters of Temporary Guardianship or Conservatorship filed in the San Francisco County Superior Court; (E) Grant Deed (same as exhibit A); (F) World Savings Conditional Loan Approval Letter; (G) Social Security Benefit Amount of Helen K. Yamasaki; (H) Wachovia Loan Statement from September 2010; (I) Wachovia Loan Statement from February 2009; and (J) Reinstatement Quote. (Dkt. Nos. 19-1—19-10 (Ex. A-J).)

United States District Court
Northern District of California

1    establish Plaintiff's ownership of the Property.  Without considering these documents, Plaintiff would

2    be unable to state a claim for any of the causes of action because it is not clear how he owns the

3    Property at issue.  It is unnecessary, however, for the Court to take notice of Plaintiff's Exhibit F, H, I,

4    and J because Wells Fargo's Exhibits F-H, through publicly recorded documents, provide the Court

5    with the necessary information regarding the loan in question.  Additionally, the Court declines to

6    take notice of Exhibit G, Borrower's Social Security Benefit Amount, because it does not present the

7    kinds of facts that may be judicially noticed.  *See* Fed. R. Evid. 201(b) ("The court may judicially

8    notice a fact that is not subject to reasonably dispute because it: (1) is generally known within the trial

9    court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

10   accuracy cannot reasonably be questions.").  Further, to the extent that Plaintiff submits Borrower's

11   Social Security benefit information to support his allegations of her mental incapacity, the Court,

12   through public record, takes notice of the appointment of a San Francisco Public Guardian as

13   Borrower's conservator.  (Dkt. No. 19-4 at 2 (Ex. D).)

**B.    The Sufficiency of Plaintiff's Claims**

15        The Court first addresses, as a group, the claims most directly related to Plaintiff's allegations

16   of improper securitization: wrongful foreclosure, slander of title, and quiet title.

17        1.    *Securitization*

18        The general theory underlying the majority of Plaintiff's causes of action is that the

19   securitization of Borrower's loan—in particular, the assignments and transfers it involved—was

20   improper, and because of that securitization, Defendants have no lawful ownership or interest in the

21   Property.  (Complaint ¶ 14.)  To support his assertion that securitization strips lenders of authority to

22   foreclose, Plaintiff relies on *Glaski v. Bank of America, N.A.*, 218 Cal. App. 4th 1079 (2013) (Dkt. No.

23   17 at 2); however, the majority of courts in the Northern District of California do not follow *Glaski*.

24   Instead, the widely held position in this District is that plaintiffs cannot challenge foreclosure on the

25   basis of the securitization of their loans.

26        In *Glaski*, a California Court of Appeal addressed a plaintiff-debtor's challenge to his

27   foreclosure on an improper-assignment-through-securitization theory.  The *Glaski* court held that a

28   plaintiff can challenge the securitization of his loan "if the defect asserted would void the

1 assignment," rather than render the assignment merely voidable. *Glaski*, 218 Cal. App. 4th at 1095.

2 Notably, the *Glaski* court relied on New York law on the ground that the pooling and servicing

3 agreement between the parties incorporated that state's law. *Id*. at 1096-97. At bottom, the court

4 concluded that a plaintiff can challenge a foreclosure if the actual transfer of his loan occurred outside

5 of the time period the PSA between the banks provides, which is exactly what Plaintiff alleges here.

6     Unfortunately, Plaintiff places all of his eggs in *Glaski*'s basket, but his reliance is misplaced:

7 while "Ninth Circuit district courts have come to different conclusions when analyzing a plaintiff's

8 right to challenge the securitization process[,]" *Johnson v. HSBC Bank USA, Nat. Ass'n*, 2012 WL

9 928433, at *2 (S.D. Cal. Mar. 19, 2012), "[e]very court in [the Northern] [D]istrict that has evaluated

10 *Glaski* has found it is unpersuasive and not binding authority." *Zapata v. Wells Fargo Bank, N.A.*,

11 No. C 13-04288 WHA, 2013 WL 6491377, at *2 (N.D. Cal. Dec. 10, 2013) (citation omitted); *see,*

12 *e.g.*, *Ordono v. US Bank Nat'l Ass'n*, No. 14-cv-00774-JD, 2014 WL 3610952, *3 (N.D. Cal. Jul. 21,

13 2014); *Apostol v. Citimortgage, Inc.*, No. 13-cv-01983-WHO, 2013 WL 63258256, at *6 (N.D. Cal.

14 Nov. 21, 2013); *Dahnken v. Wells Fargo Bank, N.A.*, No. C 13-2838 PJH, 2013 WL 5979356, at *2

15 (N.D. Cal. Nov. 8, 2013); *Subramani v. Wells Fargo Bank N.A.*, No. C 13-1605 SC, 2013 WL

16 5913789, at *3 (N.D. Cal. Oct. 31, 2013).

17     Instead of following *Glaski*, courts in this District rely on *Jenkins v. J.P. Morgan Chase Bank,*

18 *N.A.*, 216 Cal App. 4th 497 (2013), for the proposition that debtors may not pursue judicial challenges

19 to the authority of a foreclosing beneficiary based on an improper securitization theory. Specifically,

20 the *Jenkins* court held that "[a]s an unrelated third party to the alleged securitization, and any other

21 subsequent transfers of the beneficial interest under the promissory note, [a plaintiff] lacks standing to

22 enforce any agreements, including the investment trust's pooling and servicing agreement, relating to

23 such transactions." *Id.* at 515; *see also Ordono*, 2014 WL 3610952, at *3 ("[T]his Court agrees with

24 the well-settled majority view and finds that plaintiff lacks standing to challenge whether the

25 securitization or assignment of her loan was done improperly."); *Zapata*, 2013 WL 6491377, at *2

26 (same). The Court sees no reason to depart from the well-reasoned conclusions of the majority of

27 judges in this District who have followed *Jenkins*'s rule.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiff's securitization theory is not viable under *Jenkins*, and Plaintiff's wrongful foreclosure, slander of title, and quiet title claims are all predicated on the theory rejected in that case: that Defendants lack standing to foreclose on his home because the Deed of Trust was improperly transferred and Defendants have "failed to perfect any security interest in the property." (Complaint ¶ 57.)  For example, Plaintiff's first cause of action for "Wrongful Foreclosure" alleges that "Defendants . . . do not have the right to foreclose on the Property because [they] . . . cannot prove to the court they have a valid interest as a real party in interest to foreclose." (*Id.*)  Likewise, Plaintiff's fifth cause of action for "Slander of Title" contends that Defendants "disparaged Plaintiffs exclusive valid title by and through the preparing, posting, publishing, and recording of the . . . Notice of Default, Notice of Trustee's Sale, Trustee's Deed, and the document evidencing the commencement of judicial foreclosure by a party who does not possess that right." (*Id.* ¶ 104.)  Similarly, Plaintiff's sixth cause of action to "Quiet Title" alleges that "Defendants are without any right whatsoever and . . . have no right, estate, title, lien or interest in the Property." (*Id.* ¶ 113.)  Besides the purportedly fraudulent securitization and improper transfer of the note associated with that process, Plaintiff does not offer any other factual bases for these causes of action.  Put another way, faulty securitization is Plaintiff's *only* theory behind all three causes of action, but, for the reasons explained above, this theory is a non-starter.  *See Jenkins*, 216 Cal App. 4th 497; *see also Moran v. HSBC Bank*, No. 14-CV-00633-LHK, 2015 WL 139705, at *5 (N.D. Cal. Jan. 9, 2015) (dismissing plaintiff's  claims because third-party borrowers lack standing to assert problems in loan assignment (internal citations and quotation marks omitted)); *Dang v. Residential Credit Solutions, Inc.*, No. C-14-02587-RMW, 2014 WL 5513754, at *5 (N.D. Cal. Oct. 31, 2014) (finding plaintiff's wrongful foreclosure and slander of title claims failed because they were improperly premised on faulty securitization theory); *Gieseke v. Bank of Am.*, No. 13-cv-04772-JST, 2014 WL 718463, at *6 (N.D. Cal. Feb. 23, 2014) (dismissing claims plaintiff alleged on the basis of faulty securitization theory).  Because these three causes of action are based exclusively on the allegedly invalid securitization of the loan and/or the allegedly invalid assignment of the note or Deed of Trust, the Court dismisses them with prejudice.

2.    *Fraud in the Concealment*

Plaintiff's second cause of action alleges "Fraud in the Concealment" in violation of 18 U.S.C. Section 1001, and maintains that Defendants concealed from Borrower the loan securitization and information regarding the change in character of the loan.  (Complaint ¶¶ 75-83.)  Plaintiff alleges that Defendants' misrepresentations had a "materially negative effect" on Borrower and "as a direct and proximate cause of the misrepresentations and concealment Plaintiff was damaged in an amount to be proven at trial."  (*Id.* ¶¶ 76, 82.)  This cause of action fails to state a claim upon which relief can be granted because Title 18 of the United States Code is a criminal statute and does not provide individual plaintiffs with a private cause of action.  *Murphy v. Bank of N.Y. Mellon*, No. 14-CV-02030-JST, WL 4222188, at *5 (N.D. Cal. Aug. 25, 2014); *see also Hammerlord v. City of San Diego*, Case No. 11–cv–1564, 2012 WL 5388919, at *4 (S.D. Cal. Nov. 2, 2012) (dismissing plaintiff's claim brought in civil action under 18 U.S.C. § 1001 with prejudice "because the statute does not provide for a private cause of action").  Accordingly, the Court dismisses this cause of action with prejudice.

3.    *Fraud in the Inducement*

Plaintiff next alleges "Fraud in the Inducement" in violation of California Civil Code Section 3440, arguing that Defendants "misrepresented [to Plaintiff] that they are the 'holder and owner' of the Note and the Beneficiary of the Mortgage/Deed of Trust" and "are fraudulently foreclosing on the Property which they have no monetary or pecuniary interest."  (Complaint ¶ 86.)

"Fraud is an intentional tort, the elements of which are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."  *Cicone v. URS Corp.*, 183 Cal. App. 3d 194, 200, (1986).  Fraud claims, including those alleged under state law, are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *see, e.g.*, *Fortaleza v. PNC Fin. Servs. Grp. Inc.*, 642 F. Supp. 2d 1012, 1024 (N.D. Cal. 2009).  To comply with Rule 9(b), the plaintiff must state the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b).  This means that the plaintiff must include "the what, when, where, and how of the fraud."  *Vess*, 317 F.3d at 1106 (internal citations and quotation marks omitted).  In addition,

United States District Court
Northern District of California

Rule 9(b) does not allow a plaintiff to "lump multiple defendants together," but rather requires plaintiffs to distinguish their allegations and inform each defendant separately of the allegations regarding any participation in the fraud.  *Id*. (internal citations and quotation marks omitted).

Plaintiff's fraud claim fails to satisfy the heightened pleading requirements of Rule 9(b).  The Complaint alleges that Defendants intentionally misrepresented to Plaintiff that they were entitled to exercise the power of sale provision contained in the Deed of Trust and that they were the "holder and owner" of the Note and the beneficiary of the Deed of Trust.  (Complaint ¶¶ 85-86.)  Plaintiff adds that Defendants made these misrepresentations intending to induce reliance.  (*Id*. ¶ 88.)  But Plaintiff fails to include what specific misrepresentations he imputes to each Defendant; instead, he improperly lumps all Defendants together and fails to assert that any one Defendant made any particular misrepresentation or false statements.  Plaintiff has not identified any of the particular circumstances surrounding the alleged fraud, nor does he include the names or even roles of any individuals who made the allegedly fraudulent representations.  Further, the Complaint fails to allege when the statements were made, or where or how they occurred—on the telephone, in person, or in writing.  Accordingly, Plaintiff's fraud claim is dismissed for failure to plead with particularity.

Plaintiff's fraud claim must also be dismissed to the extent that it is based on the improper securitization theory which, as already described, fails as a matter of law.  (Dkt. No. 21 at 9.)  Plaintiff's allegations of misrepresentation derive from his theory that Defendants lacked any ownership interest in the Property due to the improper securitization and therefore misrepresented their interest in the Property to Plaintiff in attempts to foreclose.  As previously noted, Plaintiff cannot challenge the propriety of the securitization or assignment of the loan.  *See Jenkins*, 216 Cal. App. 4th at 515; *see also Ordono*, 2014 WL 3610952, at *3 (dismissing all eleven of plaintiff's causes of action as they all improperly depended on plaintiff's "attacks to the securitization process and the allegedly improper assignments of her note or deed of trust").  Therefore any representations Defendants made about their ownership interest in the Property cannot be false merely because of the securitization, and thus Plaintiff's fraud claim can only proceed to the extent it is based on other facts.  No such facts appear in the Complaint itself; accordingly, Plaintiff's cause of action for fraud fails to state a claim.

United States District Court
Northern District of California

Notably, Plaintiff attempts to plead additional facts about his fraud claim in his opposition to Defendant's motion.  (*See, e.g.*, Dkt. No. 17 at 4 ("The banks, the big investors, and their lawyers were deliberately hiding their fraud.  Most of us only discovered their clever ways they collaborate to con and steal from the small investor when a whistleblower rises or a clever reporter breaks a story.").)  But the Court cannot consider facts alleged in an opposition to a motion to dismiss that are not included in the pleading itself.  *Monzon*, 834 F. Supp. 2d at 940.  Even if it could, the facts Plaintiff purports to add do not provide sufficient detail to meet Rule 9(b)'s heightened pleading requirements; that is, the "the what, when, where, and how of the fraud" are still missing.  *Vess*, 317 F.3d at 1106.  Accordingly, the Court dismisses Plaintiff's third cause of action with leave to amend.

4.      *Intentional Infliction of Emotional Distress*

Plaintiff's next cause of action alleges "Intentional Infliction of Emotional Distress" ("IIED") against all Defendants.  (Complaint ¶¶ 92-102.)  Wells Fargo contends that this cause of action also must be dismissed for failure to state a claim upon which relief may be granted.

The elements of a cause of action for IIED are: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress."  *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 155 (1987).  To qualify as outrageous, "[t]he conduct must be so extreme as to exceed the bounds of what is "usually tolerated in civilized community."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal citations and quotation marks omitted); *see also Bogard v. Emp. Cas. Co.*, 164 Cal. App. 3d 602, 616 (1985) ("[B]ehavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interests; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." (citation omitted)).

Wells Fargo contends that this cause of action must be dismissed because asserting one's legal rights in pursuit of one's own economic interest never constitutes "outrageous" conduct.  (Dkt. No. 7 at 22 (citing *Girard v. Ball*, 126 Cal. App. 3d 772 (1981), for the proposition that an assertion of legal rights in pursuit of one's own economic interest is not outrageous).)  To that end, Wells Fargo argues

14

1   that by proceeding with foreclosure, it simply has pursued its own economic interest and therefore has

2   not committed any outrageous conduct.  (*Id.*)  Finally, Wells Fargo urges that case law does not

3   support Plaintiff's allegations for recovery on the basis of severe emotional distress resulting from a

4   non-judicial foreclosure but rather compels the opposite result.  (Dkt. No. 21 at 14.)

5          While some of Wells Fargo's arguments are incorrect, others accurately pinpoint why

6   Plaintiff's cause of action for IIED fails to state a claim.  Courts in this District have rejected Wells

7   Fargo's first argument—that any conduct pursued in furtherance of one's own economic interest

8   cannot be outrageous as a matter of law.  *See, e.g.*, *Frazier v. Aegis Wholesale Corp.*, No. C-11-4850

9   EMC, 2011 WL 6303391, at *7 (N.D. Cal. Dec. 16, 2011) (finding that although defendant may have

10  been pursuing its own economic interests, if it did not actually own the loan or have the authority to

11  foreclose, then it could not have been properly asserting its legal rights).  On the other hand, multiple

12  California district courts have held that the act of foreclosing on a home does not qualify as the type

13  of extreme behavior that supports an IIED claim absent allegations of bad faith.  *Davenport v. Litton

14  Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) ("Where a lending party in good faith

15  asserts its right to foreclose according to contract . . . its conduct falls shy of 'outrageous,' however

16  wrenching the effects on the borrower."); *see also Helmer v. Bank of America, N.A.*, No. 2:12-CV-

17  00799-TLN-CKD, 2013 WL 4546285, at *8 (E.D. Cal. Aug. 27, 2013) (same); *see also Quinteros v.

18  Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010) (same).

19         Here, the Complaint includes conclusory allegations that Defendants intended to cause

20  emotional harm, but does not adequately allege facts of Wells Fargo's bad faith in the foreclosure

21  process.  Plaintiff maintains that Defendants' intentional conduct—foreclosing on a property in which

22  they have no legal interest—has lost him his property and ultimately led him to suffer severe

23  emotional distress.  (Complaint ¶¶ 95-97.)  As a result of Defendants' allegedly fraudulent foreclosure

24  proceedings, Plaintiff argues that he has suffered "many sleepless nights, severe depression, lack of

25  appetite, and loss of productivity."  (*Id.* ¶ 102.)  As previously discussed, Plaintiff cannot challenge

26  the securitization process, so this allegation alone does not present enough facts to support a claim

27  that the foreclosure process was done in bad faith such that it was outrageous.  Further, Plaintiff does

28  not allege any facts as to how the foreclosure was intended to cause *him* emotional distress

United States District Court
Northern District of California

15

specifically—as compared to Borrower— and that the outrageous conduct did cause his harm.  (*Id.* ¶¶ 96-97.)  In fact, Plaintiff does not plead any specific facts regarding his alleged emotional distress and its connection at all with Defendants' behavior.  Ultimately, his allegation in-and-of-itself is insufficient to state a plausible claim; it is simply conclusory.  Plaintiff's fourth cause of action is therefore dismissed with leave to amend.

      5.    *Federal Statutory Claims*

      Plaintiff's eighth cause of action alleges that by failing to provide Borrower with statutorily required material disclosures, Defendants violated TILA and HOPEA.  (*Id.* ¶ 132.)  Plaintiff argues that as a result of Defendants' actions, he lost equity in his home, was unable to refinance, and has incurred damages as a result.  (*Id.* ¶¶ 134, 137.)  In his tenth cause of action, Plaintiff also makes a claim for "Rescission" under TILA.  (*Id.* ¶¶ 147-152.)

      a.    Truth in Lending Act

      TILA aims to "avoid the uninformed use of credit."  15 U.S.C. § 1601(a).  The statute's broad purpose is to promote the informed use of credit by assuring "meaningful disclosure of credit terms to consumers."  *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980) (internal citations omitted).  TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights."  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citing 15 U.S.C. §§ 1631, 1632, 1635 & 1638).  Violation of TILA provides borrowers with two potential forms of relief: rescission and monetary damages.  15 U.S.C. §§ 1635, 1640.

      If a lender fails to disclose material information that TILA requires, a borrower has a right to rescind his loan within three years of its consummation.  15 U.S.C. § 1635(f); *see King v. California*, 784 F.2d 910, 913 (9th Cir. 1986).  The three-year period for a TILA rescission claim is not subject to equitable tolling.  *See Beach*, 523 U.S. at 412.  In addition, under TILA a borrower has a right to monetary damages within one year of consummation of the loan.  15 U.S.C. § 1640(e); *see King*, 784 F.2d at 915.  Unlike rescission claims, "the doctrine of equitable tolling *may*, in the appropriate circumstances, suspend the limitations period [for claims of monetary damages] until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of

1   the TILA [damages] action." *Id.* (emphasis added).  Such tolling, however, is available only if

2   "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of

3   his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000), *overruled on different*

4   *grounds by Socop–Gonzalez v. INS*, 272 F.3d 1176, 1194 (9th Cir. 2000).

5     Plaintiff's TILA claims are time-barred: he brought them in 2014, well past the limitations

6   period for either type of claim.  Borrower entered into the mortgage loan in July 2005, but Plaintiff

7   did not file the Complaint until December 2014, nine years later.  (Complaint ¶ 29.)  His claim for

8   rescission, then, is time-barred because the limitations period ended in 2008, three years after the loan

9   was executed.  15 U.S.C. § 1635(f); *Khan v. ReconTrust Co.*, No. C 12-01107 LC, 2012 WL 2571312,

10  *at 4 (N.D. Cal. Jul. 2, 2012) (finding plaintiff's claim for rescission, filed six years after loan

11  consummation, time-barred).  Plaintiff's claims for damages under TILA also appear to be time-

12  barred because he brought these claims nine years after the loan—*i.e.*, eight years after the limitations

13  period ended.  Nor does the Complaint adequately allege grounds for tolling: while it alludes to

14  general and confusing allegations of fraud, the Complaint does not allege any specific facts to suggest

15  that despite all due diligence, Plaintiff was unable to obtain information regarding the existence of this

16  claim such that equitable tolling is appropriate.  15 U.S.C. § 1640(e); *Khan*, 2012 WL 2571312, *4

17  (plaintiff's claim for damages filed six years after loan consummation time-barred since complaint

18  failed to allege facts that tolling was appropriate).  Thus, both of Plaintiff's TILA claims are

19  dismissed as time-barred.

20    In addition, Wells Fargo argues that Plaintiff's TILA rescission claim is fatally deficient

21  because Plaintiff has failed to make payments on the Property since June 2011, so he has not and

22  cannot allege an ability to tender the considerable debt owed to Wells Fargo.  The "tender rule"

23  generally applies in an action to set aside a trustee's sale for procedural irregularities or alleged

24  deficiencies in the sale notice.  *Robinson v. Bank of America*, No. 12-CV-00494-RMW, 2012 WL

25  1932842, at *3 (N.D. Cal. May 29, 2012).  "[T]he rationale behind the rule is that if plaintiffs could

26  not have redeemed the property had the sale procedures been proper, any irregularities in the sale did

27  not result in damages to the plaintiffs."  *Id.* (internal citations and quotation marks omitted).  "Several

28  courts have recognized a general equitable exception to applying the tender rule where it would be

United States District Court
Northern District of California

17

inequitable to do so." *Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 969 (N.D. Cal. 2012) (internal citations and quotation marks omitted).  That is, when plaintiffs seek to set aside a completed sale, rather than to prevent a sale in the first place, the tender rule does not apply.  *Id.*; *see also Robinson*, 2012 WL 1932842, at *4 (inapplicable to apply tender rule to plaintiff's claims in part because there had been no sale to the property in question); *Giannini v. Am. Home Mortg. Servicing Inc.*, No. 11-04489 TEH, 2012 WL 298254, at *3 (N.D. Cal. Feb. 1, 2012) (tender rule applies following a flawed sale but not applicable prior to sale, where harm could be preventable).  Here, it is unclear from the Complaint whether Plaintiff still lives in the home, but if the sale has not been completed then Plaintiff would not be required to tender since he would be seeking to prevent a sale rather than set aside a completed sale.  However, this may not have any ultimate bearing on Plaintiff's claim because as discussed above, the rescission claim is fatally time-barred.

Accordingly, Plaintiff's TILA's claim for rescission is dismissed with prejudice.  Plaintiff's TILA claim for monetary damages is dismissed with leave to amend to add additional facts that plausibly establish grounds for equitable tolling as set forth above provided Plaintiff, in good faith, can do so.

　　　　b.　　Home Ownership and Equity Protection Act

Plaintiff's eighth cause of action alleges TILA and HOEPA claims simultaneously; he does not allege specific facts for either statutory violation.  (Complaint ¶¶ 130-139.)  The Court has already addressed Plaintiff's TILA claims.  Wells Fargo does not address the sufficiency of the HOEPA claim at all, but the Court does here.

HOEPA prohibits creditors from "extending credit to consumers under mortgages referred to in section 1602(aa) of this title based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment."  15 U.S.C. § 1639(h).  Although section 1602(aa) covers consumer credit transactions secured by a consumer's principal dwelling, it expressly excludes from HOEPA's coverage a "residential mortgage transaction."  15 U.S.C. § 1602(aa).  A "residential mortgage transaction" is, in turn, defined as a "transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or

18

United States District Court
Northern District of California

1   retained against the consumer's dwelling to finance the acquisition or initial construction of such

2   dwelling."  15 U.S.C. § 1602(w).

3         Borrower obtained a mortgage loan from World Savings Bank to finance her purchase of the

4   Property.  (Complaint ¶ 29.)  Because the loan was a transaction upon which a deed of trust was

5   recorded, it qualifies as a "residential mortgage transaction," as defined by § 1602(w), and thus is

6   entirely exempt from HOEPA.  *Gomez v. Wachovia Mortg. Corp.*, No. CV-09-02111 SBA, 2010 WL

7   291817, at *3-4 (N.D. Cal. Jan. 19, 2010); *see also Llaban v. Carrington Mortg. Servs., LLC*, No.

8   3:09-cv-01667-H-POR, 2009 WL 2870154, at *5 (S.D. Cal., Sep. 3, 2009) ("Plaintiff's claims under

9   HOEPA fail as a matter of law, because 'residential mortgage transactions,' such as Plaintiff's

10  purchase money mortgage, are expressly excluded from coverage." (citation omitted)); 15 U.S.C.

11  § 1639(a)(1).  Accordingly, the Court dismisses Plaintiff's HOEPA claim with prejudice.

12        6.      *Real Estate Settlement Procedures Act*

13        In his ninth cause of action, Plaintiff alleges that Defendants violated RESPA, 12 U.S.C. 2601

14  §§ 2601-2617.  (Complaint ¶¶ 140-146.)

15        Plaintiff's RESPA claim fails for several reasons.  First, Plaintiff brings his claims under 12

16  U.S.C. § 2601 generally, but fails to identify any specific provision underlying his cause of action.

17  This is problematic because courts in this District have found that not all sections of RESPA

18  contemplate a private right of action.  *See Davenport*, 725 F. Supp. 2d at 874 ("Courts in this district

19  have analyzed RESPA's structure and persuasively reasoned that Congress did not intend to create a

20  private cause of action for the sections that contemplate disclosure violations." (citations omitted));

21  *see also Bloom v. Martin*, 865 F. Supp. 1377, 1384 (N.D. Cal. 1994) (noting that there is no indication

22  that Congress intended to create a private right of action for disclosure violations provision of

23  RESPA).  However, because Plaintiff refers to the Housing and Urban Development's two-part test

24  for determining the legality of lender payments to mortgage brokers, he most likely brings his cause

25  of action under Section 2607, which prohibits charges for services other than those actually rendered.

26  *Ancheta v. Golden Empire Mortg., Inc.*, No. 10-CV-05589-LHK, 2011 WL 826177, at *5 (N.D. Cal.

27  Mar. 7, 2011) ("The Ninth Circuit has adopted the two-part test set forth by the Department of [HUD]

28  to determine whether or not a fee violates this [Section 2607] of RESPA." (citation omitted)).  The

    two-part test asks two questions: first, "whether goods or facilities were actually furnished or services

19

were actually performed for the compensation paid and if so, [] whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed." *Id.* (citation omitted).  Although Plaintiff cites to this two-part test, he states only in a conclusory fashion that Defendants gained disproportionate interest in violation of RESPA. (Complaint ¶ 142.)  Plaintiff further claims that Defendants did not provide any separate fee agreements, disclosure income resulting from interest rate increases, and "violated RESPA because payments between the Defendants were misleading and designed to create a windfall.  These actions were deceptive, fraudulent, and self-serving."  (*Id.* ¶¶ 144-145.)  But Plaintiff does not allege facts to support this claim, let alone sufficient facts to plausibly establish that Wells Fargo's conduct meets this test.

What is more, claims brought under Section 2607 are subject to a one-year statute of limitations, which begins to run when the violation occurs.  12 U.S.C. § 2614.  Plaintiff did not file his Complaint until December 2014, nine years after the alleged violations.  (*See generally* Complaint.) Thus, absent sufficient facts to plausibly establish grounds for equitable tolling, his claims are time barred.  *See* 12 U.S.C. § 2614; *see, e.g.*, *Ancheta*, 2011 WL 826177, at *5 ("Although the Ninth Circuit has not decided whether or not equitable tolling applies to RESPA claims, the court applies the principles announced by the Ninth Circuit regarding equitable tolling of TILA claims." (citation omitted)).  Plaintiff fails to allege such facts here.  Moreover, although Plaintiff appears to have attempted to plead additional facts in his opposition, none of these additional facts suggest grounds for tolling.  Thus, because the claim is time-barred and the additional facts Plaintiff attempted to plead do not provide grounds for tolling, the Court dismisses Plaintiff's RESPA claim with leave to amend to add additional facts that support his claim and plausibly establish grounds for tolling as set forth above.

### 7.   *Declaratory Relief*

In his seventh cause of action for "Declaratory Relief," Plaintiff re-alleges the previous arguments regarding the faulty securitization and requests that the Court determine the validity of the mortgage, trust deeds, Notice of Default, and "whether any Defendant has authority to foreclose on the Property."  (Complaint ¶¶ 122-125.)  Wells Fargo moves to dismiss Plaintiff's claim for declaratory relief because the derivative claim—the securitization theory—is "a nullity."  (Dkt. No. 7 at 22.)  Declaratory relief is a remedy, not a substantive claim.  *Chueng v. Wells Fargo Bank, N.A.*, 987 F. Supp. 2d 972, 981 (N.D. Cal. 2013).  Plaintiff's declaratory relief "cause of action" is

essentially a request for relief based upon the wrongful foreclosure claim, which the Court must dismiss. *See Logvinov v. Wells Fargo Bank, No.*, C-11-04772 DMR, 2011 WL 6140995, at *5 (N.D. Cal. Dec. 9, 2011). Thus, Plaintiff fails to state a claim upon which declaratory relief may be granted. Accordingly, the Court hereby dismisses this claim with prejudice.

## CONCLUSION

For the reasons explained above, the Court GRANTS Wells Fargo's motion to dismiss all of Plaintiff's claims without leave to amend, except that he may attempt to amend the third, fourth, eighth and ninth claims as outlined above. Plaintiff must file any amended complaint within 20 days of this Order. If Plaintiff files a first amended complaint, he shall clearly and concisely set forth the legal and factual basis for his IIED, fraud, and RESPA claims and his claim for damages under TILA. Plaintiff may not allege any causes of action predicated on defects in the securitization of Borrower's loan. Plaintiff is warned that failure to file an amended complaint within 20 days will result in judgment in favor of Wells Fargo.

In addition, the Case Management Conference previously set for March 26, 2015 is RESCHEDULED to July 9, 2015 at 1:30 p.m.

This Order terminates Docket No. 7.

**IT IS SO ORDERED.**

Dated: April 21, 2015

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE